**William C. GODLEY and Rodney W. Godley, Plaintiffs–Appellees,**

v.

**The UNITED STATES, Defendant–Appellant.**

No. 93–5028.

United States Court of Appeals, Federal Circuit.

Sept. 30, 1993.

Robert C. Sink, Robinson, Bradshaw & Hinson, P.A., of Charlotte, NC, argued for plaintiffs-appellees.

Patricia R. Davis, Atty., Commercial Litigation Branch, Dept. of Justice, of Washington, DC, argued for defendant-appellant. With her on the brief were Stuart M. Gerson, Asst. Atty. Gen., Michael F. Hertz and Polly A. Dammann, Attys.

Before LOURIE, Circuit Judge, SKELTON, Senior Circuit Judge, and RADER, Circuit Judge.

RADER, Circuit Judge.

William C. Godley sued the United States Postal Service in the United States Court of Federal Claims for breach of contract. The Court of Federal Claims granted Mr. Godley's motion for summary judgment. *Godley v. United States,* 26 Cl.Ct. 1075 (1992). Genuine issues of material fact require this court to vacate the summary judgment and remand for further proceedings.

Mr. Godley owned an interest in a tract of land in Mecklenburg County, North Carolina. When the Postal Service advertised its need for a postal facility, Mr. Godley offered to build one on his land. Mr. Godley made this offer to Charles D. Paramore, the Postal Service agent responsible for this project. Mr. Godley offered to build a postal facility and to provide a ten-year lease with an option to buy after the first year. The Postal Service accepted Mr. Godley's offer in February 1989.

On September 5, 1989, Mr. Paramore was indicted for conspiracy and bribery. The charges stemmed from his involvement with Postal Service projects. On November 22, 1989, Mr. Paramore pled guilty to several counts of conspiracy and bribery. *United States v. Paramore,* 966 F.2d 1445 (4th Cir. 1992). The bribery and conspiracy charges involved a subcontractor, not Mr. Godley. Mr. Godley allegedly lacked any knowledge of the illegal activities.

In October 1989, the facility was complete and the Postal Service took possession. Mr. Godley and the Postal Service entered a final lease agreement on December 5, 1989. On March 27, 1990, however, the Postal Service informed Mr. Godley that the contract was not valid because it was tainted by Mr. Paramore's illegal conduct. The Postal Service offered instead to renegotiate. The Postal Service stopped paying the lease amount in the contract.

On May 17, 1990, Mr. Godley filed claims against the Postal Service under the Contract Disputes Act of 1978, 41 U.S.C. §§ 601–613 (1988). Mr. Godley claimed that the Postal Service breached the contract. As damages, Mr. Godley sought the payments required by the original lease. In addition, Mr. Godley sought compensation for changes in the contract. On June 21, 1990, the Postal Service began paying a reduced lease rate. In November 1990, the contracting officer for the Postal Service denied Mr. Godley's claims.

In the Court of Federal Claims, Mr. Godley claimed that the contract was valid and sought to enforce the lease. The Postal Service answered that the contract was void *ab initio* due to the alleged taint from Mr. Paramore's illegal actions and alleged fraud on the part of Mr. Godley. The Postal Service also counterclaimed based on alleged fraudulent claims by Mr. Godley. The parties filed cross motions for summary judgment.

On August 14, 1992, the Court of Federal Claims granted summary judgment in favor of Mr. Godley. The trial court stated:

> Where the prime contractor is innocent of wrong-doing, the government must exercise the right to avoid the contract within a reasonable time of learning that it is tainted by wrongdoing. The failure to do so results in the loss of the right of avoidance.

*Godley,* 26 Cl.Ct. at 1081. The Court of Federal Claims then concluded that the Government had forfeited its right to avoid Mr. Godley's contract by "failing to exercise that right in a timely manner." *Id.* Specifically, the trial court noted that the Government had accepted the building and entered the contract well after Mr. Paramore's indictment. Therefore, the court awarded Mr. Godley $9,076.67 for each month after the Postal Service accepted the facility plus interest under 41 U.S.C. § 611 (1988).

## OPINION

### Summary Judgment

■ In the absence of genuine issues of material fact, a trial court may award summary judgment to a party according to the law. Fed.R.Civ.P. 56(c). In reaching summary judgment, the trial court must construe facts and resolve inferences in the light most favorable to the non-movant. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *United*

*States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). In reviewing the trial court's decision, this court reviews compliance with summary judgment standards *de novo. Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed.Cir.1987).

### Voidable or Void *Ab Initio*.

 In general, a Government contract tainted by fraud or wrong-doing is void *ab initio. J.E.T.S., Inc. v. United States*, 838 F.2d 1196, 1200 (Fed.Cir.), *cert. denied* 486 U.S. 1057, 108 S.Ct. 2825, 100 L.Ed.2d 926 (1988). This general rule protects the integrity of the federal contracting process and safeguards the public from undetectable threats to the public fisc. *United States v. Mississippi Valley Generating Co.*, 364 U.S. 520, 565, 81 S.Ct. 294, 317, 5 L.Ed.2d 268 (1961). The Supreme Court explained:

> It is this inherent difficulty in detecting corruption which requires that contracts made in violation of [a conflict of interest statute] be held unenforceable, even though the party seeking enforcement ostensibly appears entirely innocent.

*Id.*

In *Mississippi Valley*, the contract sought construction and operation of a steam power plant near Memphis, Tennessee, to take pressure off the Tennessee Valley Authority. Mr. Adophe H. Wenzell acted as a Government agent to negotiate the contract. Mr. Wenzell was also Vice President and Director of First Boston Corporation, the financial institution eventually chosen to finance the project. Although First Boston declined to accept a fee for the project, the Court held that Mr. Wenzell's conflict of interest rendered the contract unenforceable:

> [T]he negotiations in which [Wenzell] participated were the very foundation upon which the final contract was based.... If the [Mississippi Valley Generating Company] and the Government had not agreed on the cost of construction and on the cost of money, no contract would have been made.

*Id.* at 553, 81 S.Ct. at 311.

As the Court explicitly stated, in *Mississippi Valley* the taint of illegality clearly infected the contract itself. Moreover, the contractor was not innocent of the fraud. The Court noted that the Mississippi Valley Generating Company "recognized Wenzell's conflict of interest almost from the outset of the negotiations." *Id.* at 565, n. 19, 81 S.Ct. at 317, n. 19. Nonetheless the company took no action to diffuse the conflict. *Id.*

Thus, *Mississippi Valley* does not present a situation where a completely innocent contractor entered a contract with the Government which, despite illegal conduct by a Government agent associated with the contract, was nonetheless wholly untainted by fraud.[1] Rather, in *Mississippi Valley*, the contractor, with knowledge, implicitly condoned the illegal conflict of interest.[2] Moreover the ille-

---

1. In *K & R Engineering Co. v. United States*, 616 F.2d 469 (Ct.Cl.1980), the Court of Claims read *Mississippi Valley* for the proposition that "there was no actual corruption shown by either Wenzell or the [Mississippi Valley] Generating Company. Neither of them directly profited from the conflict-of-interest position Wenzell occupied." *K & R Eng'g*, 616 F.2d at 474. To the contrary, the Supreme Court in *Mississippi Valley* expressly stated: "Wenzell, as an officer and profit-sharer of First Boston, could expect to benefit from any agreement that might be made between the Government and the [Mississippi Valley Generating Company]." *Mississippi Valley*, 364 U.S. at 555, 81 S.Ct. at 312. *K & R Engineering* misread the factual predicate underlying the *Mississippi Valley* rule.

 Even in *K & R Engineering*, however, the Court of Claims recognized that the void *ab initio* rule only applies to contracts actually tainted by illegality:

 > What the statute condemns is the inevitable taint of the contract itself when *it is the product of a conflict of interest.*
 >
 > 616 F.2d at 475 (emphasis added).

2. In *John Reiner & Co. v. United States*, 325 F.2d 438, 440, 163 Ct.Cl. 381 (1963), *cert. denied*, 377 U.S. 931, 84 S.Ct. 1332, 12 L.Ed.2d 295 (1964), this court's predecessor protected a contractor innocent of wrongdoing. In a bid context, the Court of Claims gave a remedy to a successful bidder who, without knowledge of illegality, entered a contract later nullified due to bidding illegalities. The court refused to enforce the nullification because the illegality was not apparent to the innocent bidder:

 > [T]he court should ordinarily impose the binding stamp of nullity only when the illegality is plain.

 *Id.* Again in *Trilon Educational Corp. v. United States*, 578 F.2d 1356, 217 Ct.Cl. 266 (1978), the

gality permeated the contract. Without Mr. Wenzell's illegal participation, the Court noted, "no .contract would have been made." *Mississippi Valley,* 364 U.S. at 553, 81 S.Ct. at 311.

 Thus, as stated above, the general rule is that a Government contract tainted by fraud or wrongdoing is void *ab initio. J.E.T.S.,* 838 F.2d at 1200; *Mississippi Valley,* 364 U.S. at 564, 81 S.Ct. at 316. A contract without the taint of fraud or wrongdoing, however, does not fall within this rule. Illegal acts by a Government contracting agent do not alone taint a contract and invoke the void *ab initio* rule. Rather, the record must show some causal link between the illegality and the contract provisions. Determining whether illegality taints a contract involves questions of fact.

On this record, this court cannot determine whether Mr. Paramore's illegal conduct tainted the contract. Specifically, this court cannot on this record determine whether Mr. Paramore's illegal conduct caused any unfavorable contract terms. Moreover, the existence of genuine and material factual disputes and inferences in favor of the Postal Service precludes summary judgment in favor of Mr. Godley.

The trial court erred in determining on summary judgment that Mr. Godley's contract was voidable, rather than void *ab initio.* The trial court incorrectly concluded that the Government's acceptance of the building and entry of the contract with knowledge of Mr. Paramore's conduct made the contract voidable. These factors, however, are relevant to whether the Government exercised its option to void a voidable contract if, in fact, the contract was voidable. These factors do not show that Mr. Godley's contract was voidable, rather than void *ab initio.* On remand, the trial court will have the opportunity to make findings on whether Mr. Godley's contract was void *ab initio.*

In the event it determines that Mr. Godley's contract was voidable, the trial court must also determine whether the Government cancelled the contract within a reasonable time after discovery of the illegality. *ACME Process Equip. Co. v. United States,* 347 F.2d 509, 516, 171 Ct.Cl. 324 (1965), *rev'd on other grounds,* 385 U.S. 138, 87 S.Ct. 350, 17 L.Ed.2d 249 (1966). In the instant case, the reasonableness of the Postal Service's delay includes, among other factual questions, whether Mr. Godley incurred expenses (or otherwise suffered prejudice) due to the delay, whether protection of legitimate public interests (including perhaps the investigation of Mr. Paramore's conduct) justified the delay, and whether the length of the delay bore a reasonable relationship to its asserted causes.

The Court of Federal Claims also determined that Mr. Godley's conduct did not violate numerous procurement regulations and that Mr. Godley's offer was not fraudulent. *Godley,* 26 Cl.Ct. at 1084, 1087. On remand, the trial court may reconsider this alleged misconduct in the context of Mr. Godley's innocence of any illegality—a question relevant to whether the contract was void *ab initio* or voidable.

### CONCLUSION

For the reasons stated above, this court remands for a determination whether Mr. Godley's contract was void *ab initio* or voidable. Consistent with this opinion, this court vacates the decision of the Court of Federal Claims and remands for determination of material issues of disputed fact.

### Costs

Each party to bear its own costs.

VACATE and REMAND.

---

Court of Claims emphasized the difference between cases where the illegality was obvious to the contractor and cases in which the contractor was innocent. The court reasoned that innocent bidders should recover on contracts not "palpably illegal." *Id.* at 1360; *see also United States v. Amdahl Corp.,* 786 F.2d 387, 395 (Fed.Cir.1986).