# ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -- )
)
Vertex Construction & Engineering ) ASBCA No. 58988
)
Under Contract No. W56SGK-13-C-7048 )

APPEARANCE FOR THE APPELLANT: Mr. Hedayatullah Zaheb
 CEO/President

APPEARANCES FOR THE GOVERNMENT: Raymond M. Saunders, Esq.
 Army Chief Trial Attorney
 MAJ Cameron R. Edlefsen, JA
 Trial Attorney

## OPINION BY ADMINISTRATIVE JUDGE WILSON
## ON THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT

This matter arises from the contracting officer's (CO's) decision to terminate Vertex Construction & Engineering (VCE or appellant) for default due to appellant's submission of a fraudulent master electrician certificate in order to secure the contract. Appellant admits the allegation but blames the subcontractor from which it purchased the certificate, the difficulty it had as a foreign company in verifying U.S. certifications, and the government's own failure to verify the certificate and disqualify appellant from consideration. The government moves for summary judgment on the grounds of fraud in the inducement, asserting the misrepresentation rendered the contract void *ab initio*. For the reasons stated below, the government's motion is granted.

## STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. On 1 January 2013, the U.S. Army's Phoenix Regional Contracting Center at Camp Phoenix, Kabul, Afghanistan, issued Solicitation No. W56SGK-13-R-7024 (solicitation), to disassemble and reassemble 44 re-locatable buildings (RLBs) (gov't mot., ex. 1 at 1, ex. 2, ¶ 1.1).

2. The solicitation contained the following provisions in Section L, Instruction to Offerors:

> iv. **Proof of Electrican [sic] Certification:** The contractor shall submit a current and active U.S. State Certified Electrician License for their proposed certified electrician. The offeror shall also provide the email and

phone number of the licensed electrician with their proposal. The proposed electrician's license will be reviewed and verified to ensure validity during proposal evaluations, as well as at the construction site. *Failure to provide an electrician certificate as outlined above could result in your proposal being found technically unacceptable and eliminate your proposal from contract award consideration.*

(Gov't mot., ex. 1 at 55-56)

3. The Evaluation Factors in Section M of the solicitation, in discussing the acceptability of the electrician license, state:

> The *acceptability* of [the] electrician[']s license will be based upon whether the proposed electrician has an active license and the proposed employment by the offeror has been verified and reasonably demonstrates to the Government that quality requirements will be effectively met, in providing an acceptable level of electrical work under the contract. As the Government intends to award a contract without discussions, offerors that do not provide certified electricians in meeting the requirements of the Statement of Work, may result in an unacceptable rating for this Technical Capability sub-factor, and therefore, such offerors may be removed from consideration for award.

(Gov't mot., ex. 1 at 59)

4. The Statement of Work (SOW) in the solicitation called for a master electrician:

> All Electrical components shall be re-installed by a Master Electrician; electrical licensing and certification shall be presented to the Contracting Officer prior to work beginning. All electrical shall be install[ed] in accordance with Standard Specifications Attachment Division 16 Electrical.

(Gov't mot., ex. 2, ¶ 2.8.1)

2

5. VCE submitted its proposal on 20 February 2013[1], stating that the company had electrical designers familiar with the National Electrical Code (NEC) and an NEC certified electrician (gov't mot., ex. 3 at 1, 4). Appellant included, as proof of electrical certification, a license for a Mr. Donnie Frank (Mr. Frank) of Albuquerque, New Mexico, issued by the New Mexico Regulation and Licensing Department. The license indicated it was for a classification EE98-J, with certificate number 13653, and would expire 30 November 2013. (Gov't mot., ex. 3 at 17) There is no evidence in the record that appellant indicated when it submitted its bid, that it did not have computer access to license verification sites in the United States, nor is there evidence that appellant complained of not having enough time to properly prepare its bid. We find that classification EE98-J is for a journeyman electrician, not a master electrician as required by the solicitation (*see* SOF ¶ 14).

6. The government evaluated four offerors for the solicitation, finding two of the four offers technically acceptable. One of the offers provided no electrical certification and was deemed unacceptable. (Gov't mot., ex. 7 at 2)

7. On 23 February 2013, the government awarded Contract No. W56SGK-13-C-7048 (contract) to VCE (gov't mot., ex. 8; compl. ¶ 1).

8. On or about 14 June 2013, problems arose concerning the electrical work on the contract. On 14 June 2013, CO Mark Penwell (CO Penwell) notified VCE that the wire installed on the L Row is "NOT approved," and directed VCE to remove the wire and install UL approved wire. (Gov't mot., ex. 9)

9. On 16 July 2013, CO Penwell informed appellant he wanted to meet with Mr. Frank, VCE's certified electrician, the next day and that VCE and the government needed to come to an agreement to change the electrical wires. By email dated 17 July 2013, VCE's CEO, Mr. Hedayatullah Zaheb (Mr. Zaheb), emailed Mr. Frank, "As per our agreement. I will be needing you to visit our construction site, can you please let me know when you are available." CO Penwell was copied on the email. (Gov't mot., ex. 10)

10. By email dated 17 July 2013, U.S. Army Criminal Investigative Division (CID) Special Agent (SA) Duc Nguyen (CID SA Nguyen) contacted CO Penwell, expressing interest "in the RLB electrical issue regarding VCE," and requested a meeting (gov't mot., ex. 11 at 3).

---

[1] Since the solicitation was dated 1 January 2013, the "2012" date on VCE's proposal was evidently mistaken. Subsequent pages in the proposal were dated "2/20/13" (R4, tab 3 at 11-12, 25-36).

3

11. In emails dated 21 July 2013, VCE's CEO, Mr. Zaheb, was reminded by the government that the SOW required a U.S. licensed master electrician. Mr. Zaheb responded, "The qoute [sic] is not for master electrician to change the wires. If you insist on his presense [sic] we have to add 23000 in our quote. The electrician we had will not be present for couple of months." By email that same day, CO Penwell responded, "I remind you again. All work must be accomplished by a Licensed Master electrician." He went on to say that if VCE did not have one, he would have to terminate the contract. (Gov't mot., ex. 12 at 1-2)

12. By email the same day, Mr. Zaheb replied:

> I will find you the master electrician! Some of them will send you their certificates. Please give me a week of time and I will get you the final answer.
>
> NOTE: THE QOUTATION [sic] FOR WIRING CHANGE IS NO LONGER VALID UNTIL THEN AND I WILL SEND YOU THE FINAL QOUTE [sic] RIGHT AFTER THE CONTRACT WITH MASTER ELECTRICIAN.

(Gov't mot., ex. 12 at 1)

13. Immediately following Mr. Zaheb's email, CO Penwell received an email signed by Mr. Claude Watson, Jr., regarding electrical work:

> ...I was asked by Vertex Construction to send you a copy of my Electrical License. I am only a Journeyman Electrician with about 40 years experience, but agreed to send it to you. He tells me you require a Masters License and I only have Masters Experience.
>     I have worked all over Afghanistan and just finished a contract one year ago August 16th. I do wish you can use me on this project instead of a Master. I need the work and want to work. It would be almost impossible to get a Master there for a one to two month project, as you know.

(Gov't mot., ex. 13)

14. On or about 23 July 2013, CID SA Nguyen tried to verify the electrician's license VCE had submitted, and informed the CO that in searching the New Mexico E-services for contractor licensing, discovered that the VCE certificate had expired 30 November 2006, and the status was listed as cancelled. "Furthermore, the classification EE-98J on the proposal's certification is for a Journeyman Residential and Commercial Electrician, not a Master

4

Electrician." He also informed the CO he was checking the government's personnel system to determine if the referenced individual, Mr. Frank, had ever been at Camp Phoenix or even in Afghanistan. (Gov't mot., ex. 4 at 1, 5)

15. The CID completed its initial Report of Investigation 24 July 2013. It stated, in part:

> FURTHER INVESTIGATION REVEALED THE PERSON
> NAMED ON THE CERTIFICATE SUBMITTED BY
> MR. ZAHEB HAD NEVER BEEN ON SITE. ACCORDING
> TO THE SYNCHRONIZED PRE-DEPLOYMENT
> OPERATIONAL TRACKER-ENTERPRISE SUITE,
> THIS INDIVIDUAL HAS NEVER SET FOOT IN
> AFGHANISTAN. AS THE CERTIFICATE WAS GIVEN IN
> THE STATE OF NEW MEXICO, A CHECK OF THE
> STATE'S CONTRACTOR WEBSITE REVEALED THE
> CERTIFICATE HAD BEEN EXPIRED SINCE 30 NOV 06,
> AND WAS IN A CANCELLED STATUS.

(Gov't mot., ex. 14 at 3)

16. CO Penwell issued his CO's final decision 13 August 2013, informing VCE the contract was terminated for default on the grounds the electrician's license provided in VCE's offer to the solicitation was not one of a United States certified electrician as required by Section L of the Request for Proposal (RFP) (gov't mot., ex. 18).

17. On 17 August 2013, CID SA Nick Saunders interviewed Mr. Fawad Sakhi (Mr. Sakhi), VCE's vice president, regarding his knowledge of the electrician's certificate submitted in VCE's proposal. Mr. Sakhi stated he was familiar with the specifications of the contract, specifically that a master electrician with proper documentation was required in order to receive consideration for award. Mr. Sakhi said that VCE did not employ a master electrician and it solicited Kabul area companies for a qualified electrician to fulfill the contract requirements. The report went on:

> Sakhi stated VCE forwarded the Scope of Work for the
> contract to a Kabul area company identified as Kabul Global
> Construction Company (KGCC) (NFI). Sakhi stated KGCC
> provided VCE with a certificate identifying an electrician
> named Donnie Frank as a qualified electrician that would be
> sufficient for VCE to submit with their proposal to the
> Government. Sakhi stated no one at VCE knew anything
> about Donnie Frank or if anyone named Donnie Frank was
> even in Afghanistan. Sakhi stated VCE paid KGCC an

5

unknown amount of money for the certificate only. Sakhi stated officials at VCE were unaware the certificate KGCC provided had been altered or that the certification number on the certificate identified [F]rank as a Journeyman Electrician and not a Master Electrician. Sakhi stated VCE did nothing to verify the information on the certificate KGCC provided was accurate and to ensure a master electrician was on-site to verify the work being done at Camp Phoenix was properly done.

(Gov't mot., ex. 20)

18. Appellant filed a timely notice of appeal with the Board by email dated 1 November 2013, contesting the termination for default.

19. The government filed a motion for summary judgment on the grounds that the contract awarded to VCE was procured through fraud in the inducement, and thus the contract was void *ab initio*. Both parties have filed reply briefs.

## CONTENTIONS OF THE PARTIES

According to the government, the admission by appellant's vice president that VCE paid another company to provide a master electrician's certificate in order to include it with its bid, knowing without the certificate it would not be considered for award, established that the contract award was procured through misrepresentation, thus tainting the entire contract with fraud, rendering it void *ab initio* (gov't mot. at 1, 10).

Appellant responded that it did not knowingly misrepresent the validity of the certificate at issue. It "subcontracted the master electrician to Kabul Global Construction Company (KGCC) and the contract stated that KGCC will provide the master electrician certificate and...within 30 days of Notice to Proceed KGCC will bring the Master Electrician to the JOB site." Appellant agreed with Mr. Sakhi's statement that VCE paid "for a certificate only...but, we would have given him more money if he would have come to the job site according to contract." (App. resp. at 2)

VCE admitted it had done nothing to determine the authenticity of the certificate but justified not doing so because it was a local company and did not have access to "US certificate issuing authorities." Further, the solicitation required the government to review and verify the proposed electrician's license during proposal evaluations. According to appellant, since the government would evaluate the license "and if the license is not...valid they will not award the project," it would not make sense for VCE

6

to "go for a long term process of verifying the license because maybe during this evaluation I would not meet the deadline of proposal submission." (App. resp. at 2)

Appellant also argued it should not be "blamed for writing a falsified proposal" regarding its master electrician because it "had an agreement with legal entity in Afghanistan about the electrician I could easily state that I have and anybody instead of me would have done the same" (app. resp. at 3). Appellant admitted in its complaint that "fraud happened" (compl. ¶ 12), but declared, "we trusted the KGCC and there is no fault of VCE in this case" (app. resp. at 4). Appellant, however, did not submit a copy of its subcontract with KGCC. Nor did appellant's response include any information about Mr. Frank or the presence of any master electrician on-site. There were no affidavits from VCE's CEO or vice president substantiating their assertions about appellant's subcontract with KGCC or dealings with Mr. Frank.

The government's reply took exception to VCE's assertions that it subcontracted with KGCC for a master electrician, not just a certificate, pointing out those statements are inconsistent with its answers in an interview with the CID that it paid for a certificate only. The government noted VCE has not offered any evidence of a subcontract with KGCC. (Gov't reply br. at 1-2) The government also disagrees with VCE's argument that VCE is absolved from the consequences of its conduct by the government's failure to verify the certificate presented in the bid, arguing a government failure to verify does not negate appellant's misrepresentation in its proposal (*id.* at 3).

## DECISION

Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390-91 (Fed. Cir. 1987); *Lockheed Martin Aircraft Center*, ASBCA No. 55164, 08-1 BCA ¶ 33,832 at 167,445. The moving party bears the burden of proof and all significant doubt over factual issues must be resolved in favor of the nonmoving party. *Lockheed*, 08-1 BCA ¶ 33,832 at 167,445. There is a genuine issue of material fact if the evidence is such that a reasonable fact finder could find in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

A nonmoving party may not simply rest upon vague allegations of disputed facts in opposing such a motion; it must present sufficient evidence to show evidentiary conflicts exist on the record as to "material fact[s]" at issue. *Armco, Inc. v. Cyclops Corp.*, 791 F.2d 147, 149 (Fed. Cir. 1986); *Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.*, 731 F.2d 831, 835-36 (Fed. Cir. 1984).

Generally, "a Government contract tainted by fraud or wrongdoing is void *ab initio.*" *Godley v. United States*, 5 F.3d 1473, 1476 (Fed. Cir. 1993) (citing *United States v. Mississippi Valley Generating Co.*, 364 U.S. 520, 564 (1961)); *J.E.T.S., Inc. v. United*

*States*, 838 F.2d 1196, 1200 (Fed. Cir. 1988). In holding a contractor's false small business certification barred its subsequent claim, the Federal Circuit explained:

> The contract…was procured by and therefore permeated with fraud…. J.E.T.S. obtained this contract by knowingly falsely stating that it was a small business. Had it stated the truth…it would not have received the contract. A government contract thus tainted from its inception by fraud is void *ab initio*, like the government contracts held void because similarly tainted by a prohibited conflict of interest in *United States v. Mississippi Valley Generating Co.,* 364 U.S. 520, 5 L. Ed. 2d 268, 81 S. Ct. 294 (1961) and *K & R Eng'g Co. v. United States,* 222 Ct. Cl. 340, 616 F.2d 469 (1980).

*J.E.T.S.*, 838 F.2d at 1200.

Holding a contract void is a harsh penalty, but as the Supreme Court has said, the primary purpose of holding a contract tainted by fraud void *ab initio* is to "guarantee the integrity of the federal contracting process and to protect the public from the corruption which might lie undetectable beneath the surface of a contract conceived in a tainted transaction." *Mississippi Valley,* 364 U.S. at 564-65; *see also Godley,* 5 F.3d at 1475 (citing *Mississippi Valley* in stating that "general rule [of a government contract tainted by fraud or wrong-doing is void *ab initio*] protects the integrity of the federal contracting process and safeguards the public from undetectable threats to the public fisc").

Use of this remedy is not limited to "situations where the contractor has been convicted in a criminal action stemming from the misrepresentation." *Servicios y Obras Isetan S.L.,* ASBCA No. 57584, 13 BCA ¶ 35,279 at 173,162. In *Servicios,* a contractor's material misrepresentations in its bid for a construction project at Moran Air Base in Spain, upon which the government had justifiably relied, met the standard for holding the contract void *ab initio*. The contractor had forged both a subcontractor agreement with another company that possessed most of the specialized certifications required to be possessed by the successful contractor's team and the required bank guarantees. The contractor did not possess the requisite certifications on its own, and had it not misrepresented itself to the government, it would not have been considered for award. We concluded the contract was void *ab initio* and the contractor's appeal of its termination for default was denied. *Id.* at 173,162-63.

The government presented evidence that VCE's vice president told an investigator appellant paid only for a master electrician certificate to submit with its bid (SOF ¶ 17). VCE does not dispute that it did so. Rather, it admits the statement is true but that "we would have given him more money if he would have come to the job site according to contract" (app. resp. at 2). Appellant also acknowledges that it knew if it did not include

evidence of a master electrician certificate in its bid, it would not have been considered for award (SOF ¶ 17). VCE admitted it did nothing to verify the certificate it submitted with its bid, as required by the solicitation, or ensure the presence of a master electrician on site during performance of the contract (*id.*). According to appellant, it trusted KGCC and "there is no fault of VCE in the case" (app. resp. at 4).

Appellant's primary defense is that that the government had an obligation to verify the certificate and had it done so, appellant's misrepresentation would have been discovered, and the government could have disqualified VCE from the bidding process (app. resp. at 2). The argument that bids can present misinformation, and the burden is on the government to ferret it out, is not persuasive. The government analogizes the effects of its failure to verify the master electrician certificate to those situations in which the government's right to revoke acceptance under the Inspection of Construction clause is not barred by government inspection failures as in *Chilstead Building Company*, ASBCA No. 49548, 00-2 BCA ¶ 31,097 (gov't reply br. at 3). In *Chilstead*, a roofing contractor's representations that it was proceeding in accordance with the drawings followed shortly thereafter by installation of deviant trusses was a gross mistake amounting to fraud in spite of the government inspector's failure to measure or inspect. *Id.* at 153,575-76. We reached the same conclusion in *Z.A.N. Company*, ASBCA No. 25488, 86-1 BCA ¶ 18,612 at 93,489 (holding that delivery of improperly marked watches was a gross mistake amounting to fraud despite the fact that government representatives may not have acted "with a maximum of circumspection") and in *Jo-Bar Mfg. Corporation*, ASBCA No. 17774, 73-2 BCA ¶ 10,311 at 48,684-85 (finding a contractor's decision that aircraft bolts did not have to be heat treated and failure to treat them, along with the misrepresentation to the government inspector that it had been advised heat treatment was not required was a gross mistake amounting to fraud despite possible lack of in-process inspection by the government).

However, more fundamental is that the requirement for the government to verify the certificate submitted by VCE was for the benefit of the government, not for VCE. The law is clear that when contractors try to shift responsibility for their deficiencies not discovered when the government has conducted a pre-award survey, a contractor's obligation to verify information submitted in its bid remains. We have repeatedly held pre-award surveys are conducted for the government's benefit and even if they are inadequately performed, they do not confer rights upon contractors. *Laumann Manufacturing Corporation*, ASBCA No. 51249, 01-2 BCA ¶ 31,517; *T.M. Industries*, ASBCA No. 19090, 75-1 BCA ¶ 11,075. It is the contractor's responsibility, not the government's, to determine its own capability to perform a contract and, thus, even if a government pre-award survey is conducted negligently, "that circumstance can be of no consequence or benefit to the contractor." *Venice Maid Company*, ASBCA Nos. 20546, 20792, 76-2 BCA ¶ 12,045 at 57,810 (citing *Aerospace Support Equipment, Inc.*, ASBCA No. 13579, 71-1 BCA ¶ 8904). In *Venice Maid*, the Board applied the same principles to the government's failure to perform an adequate post-award orientation

9

conference in upholding a termination for default wherein appellant complained the mistake it made which rendered it unable to perform would have been discovered by the government if an adequate pre-award survey or post-award orientation conference had been conducted. *Venice Maid*, 76-2 BCA ¶ 12,045 at 57,810.

The same result was reached in *Tri-States Service Company*, ASBCA No. 31139, 90-3 BCA ¶ 23,059, when a contractor sought reformation of a contract due to a mistake it made which would have been discovered had the government conducted a required pre-award survey. The Board found the argument without merit, stating:

> Pre-award surveys are for the benefit of the Government and not for the benefit of the contractor. Appellant has no standing to require the conduct of such survey. Accordingly, there is no basis for charging the Government with constructive notice of something that might have been found in the course thereof.

*Id.* at 115,773.

The solicitation in the present appeal did state that the government would review and verify the proposed electrician's license during proposal evaluations and at the construction site (SOF ¶ 2). This did not make the government the guarantor of appellant's bid, however, or free VCE from the requirements of the solicitation. Appellant's misconduct is not absolved by any government failure.

In the present case, appellant has presented no evidence contradicting the government's facts, only unsupported arguments as to why its misrepresentations should be excused. In addition to blaming the government for not discovering VCE's fraud by verifying the master electrician's certification as discussed above, appellant justifies its failures by pointing to its small size, its status as a local company, and its lack of computer capability (app. resp. at 2). However, even if these assertions were relevant, no evidence is presented upon which these statements rest (SOF ¶ 5).

Nor can solicitation requirements be ignored because compliance would be difficult, take time, or be expensive. Similar arguments were made by a contractor trying to justify overstating the credentials of its personnel in its bid because the requirements that certain technicians hold Class I licenses was "unrealistic and over burdensome." The contractor also complained providing such a technician would have been "very expensive." *Dongbuk R&U Engineering Co.*, ASBCA No. 58300, 13 BCA ¶ 35,389 at 173,638. VCE's justifications imply essentially the same – because it was too hard to find a certified master electrician in Afghanistan and would have cost more money – the requirement should be excused. This we cannot do. As we said in *Dongbuk*, relying on

10

the Court of Claims explanation in *Prestex Inc. v. United States*, 320 F.2d 367, 371-72 (Ct. Cl. 1963):

> [T]he Comptroller General repeatedly has held that a specification deviation in a contractor's proposal affecting price, quality or quantity offered is a major deviation which cannot be waived. 39 Comp. Gen. 570 (1960); 36 Comp. Gen. 251 (1956); 30 Comp. Gen. 179 (1950). The effect of statutes and regulations pertaining to the letting of public contracts is that the contract awarded must be the contract advertised and, if not, the government is not bound because its contracting agent cannot bind the government beyond his or her actual authority. The rejection of nonresponsive bids is necessary if the purposes of the competitive procurement are to be attained, that is, to give everyone an equal right to compete for Government business, to secure fair prices, and to prevent fraud.

*Dongbuk*, 13 BCA ¶ 35,389 at 173,638.

The solicitation was clear that without submission of a master electrician certification a bid would not be considered (SOF ¶¶ 2, 3). This in fact was the case, as another bid, which did not include a master electrician certification, was disqualified from consideration of award (SOF ¶ 6). Therefore, it is clear that VCE obtained the contract through a material misrepresentation, providing only a certificate (that itself proved to be fraudulent), with no realistic intention of employing a master electrician, to the other bidders "disadvantage, and to the detriment of the federal government and its procurement system." *Dongbuk*, 13 BCA ¶ 35,389 at 173,638.

It appears there are no material facts in dispute. VCE has set forth no evidence that would allow a reasonable fact finder to conclude otherwise. *See Liberty Lobby*, 477 U.S. at 248 (issues of fact are genuine for summary judgment purposes only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party"); *Opryland USA Inc. v. The Great Am. Music Show*, 970 F.2d 847, 849-50 (Fed. Cir. 1992) (a fact is "material" if it may affect the outcome, i.e., the finding of that fact is relevant and necessary to the proceeding); *see also Long Island Savings Bank v. United States*, 503 F.3d 1234, 1251 (Fed. Cir. 2007).

Based on the uncontested evidence presented by the government, drawing all reasonable inferences in favor of VCE, and accepting as true the statement in the complaint wherein appellant has admitted "fraud happened," we have to conclude that the contract which was entered into between VCE and the government is void *ab initio*. *See*

11

*Long Island Savings Bank*, 503 F.3d at 1246; *C&D Construction*, 90-3 BCA ¶ 23,256 at 116,683. Accordingly, the government's motion for summary judgment is granted.

CONCLUSION

The appeal is denied.

Dated: 7 November 2014

OWEN C. WILSON
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

DAVID W. JAMES, JR.
Administrative Judge
Acting Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 58988, Appeal of Vertex Construction & Engineering, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals