ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeal of - | ) | |
| | ) | |
| Gilbert Solutions, LLC | ) | ASBCA No. 63508 |
| | ) | |
| Under Contract No. W91WRZ-22-P-0001 | ) | |

APPEARANCES FOR THE APPELLANT:    Barbara A. Duncombe, Esq.
    Brandon E. Dobyns, Esq.
    Stephen Darby, Esq.
     Taft Stettinius & Hollister LLP
     Indianapolis, IN

APPEARANCES FOR THE GOVERNMENT:    Scott N. Flesch, Esq.
     Army Chief Trial Attorney
    CPT Natalie W. McKiernan, JA
    Robert B. Neill, Esq.
     Trial Attorneys

OPINION BY ADMINISTRATIVE JUDGE TAYLOR
PURSUANT TO BOARD RULE 12.2

The United States Army (Army or government) awarded a firm-fixed price commercial items contract to Gilbert Solutions, LLC (Gilbert) to purchase four portable restroom trailers for delivery to Guantanamo Bay, Cuba (R4, tab 1). The government issued a contracting officer's final decision (COFD) terminating the contract for cause (R4, tab 50). Gilbert timely appealed the COFD and elected to proceed on the appeal under the Board's Small Claims (Expedited) procedures, Board Rule 12.2. The Contract Disputes Act (CDA), 41 U.S.C. § 7106(b)(4)-(5), as implemented by Board Rule 12.2, provides that this decision shall have no precedential value and in the absence of fraud, shall be final, and conclusive, and may not be appealed or set aside. We find this contract was *void ab initio* due to Gilbert's material misrepresentations in its bid. As the contract is deemed *void ab initio*, there is no CDA contract in being, and we are deprived of jurisdiction to consider Gilbert's appeal of the termination for cause. Consequently, the appeal is denied.

FINDINGS OF FACT

1. Army's Request For Quotes

On January 19, 2022, the Army posted Request for Quotation (RFQ) W91WRZ-22-R-0002 on the Unison Marketplace (Unison) for four four-station ADA compliant

restroom trailers for use by the Office of Military Commissions (OMC) (R4, tab 2).  The RFQ listed the total target price as $227,000 with a delivery date of 60 calendar days after the seller's receipt of the order from the buyer (*id.* at 1).  The RFQ further indicated it was for commercial items and included the following item description:

> The ADA Restroom Trailer + 4 Station | Maui Series - 1 women's suite with 2 stalls, 1 men's suite with 1 stall and 1 urinal, and 1 ADA unisex suite, each with a separate entrance. * ·Each standard stall needs to contain a privacy stall pedal flush china toilet, sink with cabinet, and shatterproof mirror. · This trailer features a hydraulic lift system for the trailer to lower to the ground with the push of a button! · The ADA-compliant unisex suite includes (1) ADA toilet, wheelchair-accessible sink, shatterproof mirror, and grab rails for assistance. · Suite also allows for the required 66' turning circle, · Climate controlled with A/C · 140-gallon fresh water tank and 750-gallon waste tank. · Non-Skid Flooring (coin rubber) · Hands Free Paper Towel Dispenser- 3 **Must be capable of sustaining long term use**

(*Id.* at 2)

The RFQ required offerors to attach the proposed unit's layout with their quotations to give the Army the opportunity to verify the unit met the specified requirements (R4, tab 2 at 2).  The listed suggested seller was Comforts of Home (*id.* at 1).  The RFQ also included the standard bidding "Meet or Exceed" requirement language that, "Sellers MUST enter exactly what they are bidding (including make, model, and description) into the blank description field in order for the bid to be considered" (*id.* at 2).  The RFQ indicated the bids closed on February 1, 2022 (*id.* at 1).  The RFQ included a solicitation as an attachment (*id.* at 2).

The solicitation indicated it was for commercial items in accordance with Federal Acquisition Regulation (FAR) subpart 12.6 (R4, tab 2a at 1).  It further stated potential offerors were to quote on the specified items IAW FAR 52.211-6, BRAND NAME OR EQUAL (SEP 1999) (*id.*).  The solicitation's item description was the same as the RFQs, including a reference to "The ADA Restroom Trailer + 4 Station" | Maui Series" (*id.*).  The solicitation also stated, "Technical and Delivery time, when combined, are significantly more important than cost or price" (*id.* at 3).  The solicitation specified the government would evaluate the offeror's quote against the government's minimum requirements as specified in the solicitation to determine whether the quote was acceptable (*id.* at 2).  Finally, the solicitation stated that the government may accept an offer before its specified expiration time unless a written notice of withdrawal was received before award (*id.* at 3).

2

Ms. Joslyn Skinner is a logistics management specialist at Guantanamo Bay (tr. 1/93).  Ms. Skinner developed the item description for the RFQ based upon her online research of portable latrines (tr. 1/96).  Ms. Skinner identified a portable latrine on the portablerestrooms.com website that had the same style and basic characteristics as the one currently in place at Guantanamo (tr. 1/99; R4, tab 53).  Comforts of Home manufactured that trailer (tr. 2/53).  Portable Restrooms placed the designator SKU #CHS408999 on the Comforts of Home ADA plus four restroom trailer and called it the "Maui Series" (R4, tab 53 at 1).  Other dealers sell the same Comforts of Home trailer but identify it by different nomenclature (tr. 2/24-25).

2.  Gilbert's Offer

Gilbert submitted a bid in response to the RFQ (R4, tab 3).[1]  Gilbert bid a total price of $329,600 with a 60-day delivery (*id.* at 3).  In its bid, Gilbert referenced part number CHS408999 and provided a description of the Comforts of Home four ADA restroom trailer (*id.* at 5).  Mr. Justin Gilbert, one of Gilbert's founders, testified he obtained that description from the Portable Restroom Trailers website (tr. 2/117).  In accordance with the RFQ requirements, Gilbert also included a floor layout of its proposed trailer with its bid (R4, tab 3a).  Mr. Gilbert further testified he also obtained that floor layout from the Portable Restroom Trailers website (tr. 2/119).  The layout is identical to the layout for SKU # CHS408999 found on Portable Restrooms website (*compare* R4, tab 53 at 4, *with* R4, tab 3a).  The layout had a marking indicating the trailer's length to be 23 feet and 6 inches long, semi-private men's and women's suites, a turn radius in the ADA compliant unisex suite of 66 inches and a 140-gallon fresh-water tank (R4, tab 3a).  At the time Gilbert submitted its bid, the build time for a Comforts of Home trailer was eight to nine months (tr. 2/55).

On February 2, 2022, Sergeant First Class (SFC) Jeremy Zelbst, the contracting officer, requested photos from Gilbert of the latrine trailers they quoted in their bid and confirmation they could meet the 60-day delivery timeline (R4, tab 54 at 1).  Following receipt of that email, Mr. Gilbert apparently made an inquiry to Ready2Go trailers regarding obtaining the Comforts of Home trailer (R4, tab 55 at 1, tab 84 at 2).  Gilbert had not spoken with Ready2Go before submitting its bid in Unison (tr. 2/118).  Mr. Lee Currie, a sales representative for Ready2Go, informed Mr. Gilbert that the Comforts of Home trailer would not be available until mid-August so suggested an alternative trailer manufactured by UltraLav (*see* R4, tab 84 at 2; tr. 2/55).  The UltraLav trailer was smaller with a 20-foot-long box, four private restroom suites, each with a separate entrance on opposite sides of the trailer, and an ADA compliant restroom suite with a 60-inch turning radius (R4, tab 55a).  Ready2Go identified the trailer by its stock number

[1] Unison refers to a contractor's submission in response to an RFQ as a "bid" rather than a "quote."

HH-412501-A (R4, tab 55 at 2). Gilbert apparently decided to deliver the smaller trailer to the government since the Comforts of Home trailer was not available within the delivery time frame (*see* R4, tab 84 at 2).

On February 4, SFC Zelbst requested confirmation from Gilbert that the offered latrines quoted on the subject bid contained paper towel dispensers and had a hydraulic lift system (R4, tab 4 at 3). Mr. Gilbert responded indicating Gilbert was getting confirmation from their supplier regarding the hydraulic lift (*id*. at 2). Mr. Gilbert also provided SFC Zelbst with the product description for the HH-412501-A trailer including a box size of 20' x 6' with four private suites (*id.*). In that email, Mr. Gilbert did not explicitly state Gilbert was substituting a different trailer model from the one identified in its bid (*id.*). SFC Zelbst testified that he was looking for Gilbert's response concerning the paper towel dispensers and hydraulic lift and missed Mr. Gilbert's reference to the different trailer characteristics (tr. 1/50).

Mr. Gilbert testified that he had a phone conversation with SFC Zelbst before receiving the February 4 email (tr. 2/79). During that call, Mr. Gilbert testified he informed SFC Zelbst that the Comforts of Home trailers would not be available within the required timeline, but alternative trailers were available (*id.*). He further testified his February 4 email was a follow-up to the phone conversation (tr. 2/80). SFC Zelbst testified he never had any conversations with Mr. Gilbert about the bid specifications or changing the contract requirement (tr. 1/80). He further testified that Gilbert never told him they were substituting a different trailer for the one that was described in their bid (tr. 1/58). Furthermore, SFC Zelbst testified that Gilbert did not provide either a verbal or written notice to the government that it intended to withdraw its bid prior to contract award (tr. 1/39).

The available record supports SFC Zelbst's recollection. In his February 4 email, SFC Zelbst attempted to confirm the characteristics of "the latrines quoted on the subject bid" (R4, tab 4 at 3). SFC Zelbst would not have attempted to confirm the characteristics of the latrines offered in Gilbert's bid if Gilbert had already informed him that the Comforts of Home trailer was not available, and they were substituting a different product. Moreover, Mr. Gilbert's February 4 email does not reference a prior phone call (R4, tab 4 at 2). If such a call had occurred, the follow-on email would likely have referenced that call.

In addition, SFC Zelbst emailed the OMC on February 7 indicating Gilbert had just informed him that its vendor had two trailers in stock and were estimating eight weeks for the other two (R4, tab 59 at 4). In his correspondence with the OMC, SFC Zelbst did not mention Gilbert was now offering a different trailer. The OMC, on February 9, clearly thought they were getting the Comforts of Home trailer from Gilbert as evidenced by the floorplan they attached to their acceptance email (R4, tab 58 at 1, 13). The OMC accepted Vendor E's offer over a different bidder because they thought

4

that vendor was delivering the same trailer with a much shorter shipping time (R4, tab 58 at 1; tr. 1/109-10). Gilbert was Vendor E (tr. 1/54). We find Mr. Gilbert's testimony regarding a phone conversation with SFC Zelbst allegedly informing him of the change in the offered trailer before the February 4 email, not credible.

On February 7, 2022, Gilbert confirmed the trailer would come with the hydraulic lift system, and that they had "just talked to our vendor to confirm all specifications and we are good to go" (R4, tab 4 at 1). On February 8, Ready2Go sent Gilbert an email indicating it could produce all four trailers within ninety days, but sixty days would be an "empty promise" (R4, tab 56). Gilbert did not update the government on the production timelines (tr. 1/52). On February 9, SFC Zelbst requested Gilbert provide its updated SAM registration (app. supp. R4, tab 4 at 1). Gilbert responded with a screen shot of their SAM registration and a copy of the manufacturer's specifications for the HH-412501-A trailers (*id.* at 2). SFC Zelbst testified that he does not believe he opened the attachment for the specifications, because he was interested only in seeing the SAM registration (*see* tr. 1/58).

3. Contract Award

On February 11, 2022, SFC Zelbst notified Gilbert to, "Please go ahead with the latrines quoted in UNISON Buy 1090912_01. Your quote was for 4 latrines at a total price of $329,600.00" (R4, tab 42e at 2). On February 14, the Army awarded Contract No. W91WRZ-22-P-0001 (the contract) to Gilbert (R4, tab 1). Gilbert signed the contract on February 15, 2022 (R4, tab 24c). The total contract award was for $329,600 (R4, tab 1 at 1). The contract had an April 19, 2022, delivery date (*id.* at 7).

SFC Zelbst checked contract award block number 29 to indicate the government was accepting Gilbert's Unison bid (R4, tab 1 at 1; tr. 1/60). Block number 29 referenced the February 2, 2022, date since that was the date SFC Zelbst generated the report of all responsive Unison bids the day after bids closed (tr. 1/40-41). The contract included a specification identical to that listed in the RFQ but did not reference the Maui Series or the model number (R4, tab 1 at 6). The specification indicated one women's suite with two stalls, one men's suite with one stall and one urinal, and one ADA unisex suite with a 66-inch turning circle (*id.*). The specification also indicated each trailer should have a 140-gallon fresh-water tank and a 750-gallon waste tank (*id.*).

On February 14, 2022, Gilbert signed a "Bill of Sale" with Ready2Go for the four HH-412501-A UltraLav trailers for a total price of $271,670 (R4, tab 61). The HH-412501-A UltraLav trailer was manufactured by Wells Cargo – Ultralav (R4, tab 62; tr. 1/18-19). The HH-412501-A UltraLav trailer was 20 feet long and 6 feet wide with one axle as opposed to two, four separate private suites with separate entrances (two on each side), a 60-inch turning circle for the ADA suite, a 105-gallon fresh-water tank and

5

a 320-gallon waste tank (R4, tab 47a). At the time Gilbert signed the "Bill of Sale", Ready2Go had not yet manufactured any of the trailers (tr. 2/15).

4. Government's Confirmation of Gilbert's Offer

In early May 2022, the OMC requested the trailer's salient characteristics from the contracting officer since they wanted to submit the installation project request (R4, tab 12 at 4-5). On May 10, 2022, SFC Shanaye Davis, the administrative assistant liaison between the OMC and contracting office, requested the specification/data sheet for the latrines from Gilbert (R4, tab 64 at 1). SFC Davis indicated she already had the trailer floor layout from Gilbert's Unison bid (tr. 1/164). Mr. Matthew Gilbert, the second Gilbert partner, responded by sending her a floor layout for a 23-foot by 6-foot trailer with pictures of a trailer (R4, tabs, 7, 7A). Mr. Gilbert testified he sent SFC Davis that floor layout because it was the one in Unison, or he pulled it from the internet (tr. 2/153). SFC Davis indicated she already had the floor layout but needed the manufacturer's specification sheet (R4, tab 83 at 1). On May 12, Mr. Gilbert provided everything Gilbert had received on the trailer from Ready2Go to SFC Davis (R4, tab 8 at 1-2). The documents pertained to the UltraLav and not Comforts of Home trailer (R4, tabs 8a-8e). SFC Davis responded to Mr. Gilbert's submission indicating the parties have "an issue" since the contract was awarded based on the floor plan Gilbert uploaded to Unison, but the documents Mr. Gilbert submitted were for a different trailer (R4, tab 8 at 1). SFC Davis indicated those floor plans were "not acceptable" (*id.*).

Mr. Gilbert responded to SFC Davis that Gilbert was able to "correct the floor plan to semi-private mens and womens bathrooms" (R4, tab 9 at 1-2). SFC Davis asked Mr. Gilbert if the floor plan was going to be identical to the Comforts of Home trailer since that is what Gilbert submitted during the solicitation, and that was the floor plan upon which the OMC office based the contract award (R4, tab 9 at 1). Mr. Gilbert responded with a single word— "Yes" (R4, tab 10). Mr. Gilbert testified that his use of the word "yes" in his email was intended to show agreement only with the trailer's floor layout and not the trailer dimensions (tr. 2/159).

The government continued to request the trailer's "salient characteristics" from Gilbert (R4, tab 14). On May 19, 2022, Mr. Gilbert provided the government with the "updated floor plan" for the UltraLav trailer with semi-private suites (R4, tabs 15, 15a). Mr. Gilbert testified he prepared this mockup drawing (tr. 2/161). The government responded to Mr. Gilbert that this email still did not contain the requested "salient characteristics" (R4, tab 16). On May 19, 2022, Mr. Gilbert again provided the trailer's "salient characteristics" to the government (R4, tabs 18, 18a). These documents showed a Ready2Go trailer with a stock #AA-412501-A, four suites—one ADA-compliant and three standard—with a box size of 22 feet by 6 feet and 4 inches (R4, tab 18a). Mr. Gilbert testified that he sent this picture to the government because it was the first

picture of a trailer similar in size and layout, he found on the Ready2Go website (tr. 2/210).

5.  The Government's Rejection of the Delivered Trailers and Termination for Cause

The first two trailers were delivered to Guantanamo Bay on August 9, 2022 (R4, tab 76 at 1).  The OMC office rejected the trailers because they did not meet the contract specifications (R4, tab 29 at 1).  On August 23, 2022, the government sent Gilbert a "Show Cause Notice" alleging the delivered trailers did not meet the prescribed length (R4, tab 30a).  Gilbert responded by requesting the government show them in the contract where the trailers did not meet the specifications (R4, tab 49 at 3).  The government responded that the contract was awarded based on Gilbert's proposal and floor layout provided in response to the UNISON RFQ (*id.* at 2).  The delivered trailer did not match that floor layout (*id.*).

Gilbert responded that the delivered trailer met the contract requirements (R4, tab 49a).  Moreover, Gilbert maintained it notified both SFC Zelbst and SFC Davis that it was providing a shorter trailer (*id.* at 1).  On September 9, 2022, the government sent Gilbert a termination for cause notice pursuant to the termination for cause clause at FAR 52.212-4(m) (R4, tab 50).[2]  The basis for the termination remained a failure to meet the contract specifications (*id.*).

DECISION

The government contends this contract was *void ab initio* due to Gilbert's misrepresentations in its bid (gov't br. at 47-50).  A contract is void or voidable when its award resulted from misrepresentations in the contractor's bid.  *See J.E.T.S., Inc.*, ASBCA No. 28642, 87-1 BCA ¶ 19,569 at 98,917; *aff'd J.E.T.S., Inc. v. United States*, 838 F.2d 1196 (Fed. Cir. 1988) (voiding a contract due to misrepresented small business qualification in contractor's bid).  The severe remedy of voiding a contract is necessary when a contractor materially misrepresents information in its bid due to the potential injury to the public interest by actions which compromise the integrity of the government contracting process.  *J.E.T.S.*, 842 F.2d at 1200; *see also United States v. Miss. Valley Generating Co.*, 364 U.S. 520 at 564 (1961).

In the *Hollymatic Corp.* appeal, we recently denied a contractor's appeal of a termination for cause of a commercial items contract since we determined the contract was *void ab initio* due to the contractor's misrepresentation of its product during the source selection.  *Hollymatic Corp.*, ASBCA Nos. 61920, 61956, 21-1 BCA ¶ 37,823

---

[2] Terminations for cause under FAR 52.212-4(m) are treated the same as terminations for default under FAR Part 49.  *See O-Tech Sols., LLC.*, ASBCA Nos. 61898, 62095, 23-1 BCA ¶ 38,338 at 186,166.

7

at 183,668. This appeal is similar. Here, Gilbert misrepresented the trailers it intended to provide the government at the time it entered the contract.

The common law defense of fraud in the inducement may be established either by proof of fraud or material misrepresentation. *Hollymatic,* 21-1 BCA ¶ 37,823 at 183,665 (citing RESTATEMENT (SECOND) OF CONTRACTS §164(1) (1981)). The Board may not make findings of fraud, but we may make findings as to the material facts relating to material misrepresentations, and how those facts affect the contract. *Id.* at 183,665; *Aydin Corp., Microwave Div.*, ASBCA No. 34054, 89-1 BCA 21,206 at 106,997 ("When a contractor makes a material misrepresentation of fact that is relied on by the Government in entering into a contract, the Government has the common law right to rescind the contract."); *Supreme Foodservice GmBH*, ASBCA No. 57884 *et al.*, 16-1 BCA ¶ 36,387 at 177,384; *Servicios y Obras Isetan S.L.*, ASBCA No. 57584, 13-1 BCA ¶ 35,279 at 173,162.

Three requirements must be met in addition to a misrepresentation to render a contract voidable: (1) the misrepresentation must have been fraudulent or material; (2) the misrepresentation must have induced the recipient to make the contract; and (3) the recipient must have been justified in relying on the misrepresentation. *Hollymatic*, 21-1 BCA ¶ 37,823 at 183,665 (citing *Servicios y Obras Isetan S.L.*, 13-1 BCA ¶ 35,279 at 173,162; RESTATEMENT (SECOND) OF CONTRACTS § 164(1) (1981)).

1. Material Misrepresentation

A misrepresentation is defined as, "an assertion that is not in accord with the facts." *L.C. Gaskins Constr. Co.*, ASBCA No. 58550 *et al.*, 17-1 BCA ¶ 36,780 at 179,286 (citing RESTATEMENT (SECOND) OF CONTRACTS §159 (1981)). In this case, Gilbert represented in its bid that it could deliver the Comforts of Home trailers within 60 days (R4, tab 3 at 1). Gilbert provided the part number CHS408999 and both a description and layout of the Comforts of Home trailer (*id.* at 5). Gilbert apparently submitted its bid without first checking to see if those trailers were available for delivery within the required time frame (*see* tr. 2/118). If it had, Gilbert would have discovered the Comforts of Home trailer was not available until mid-August (*see* R4, tab 84 at 2; tr. 2/55).

After it discovered the Comforts of Home trailer would not be available until mid-August, Gilbert decided to deliver a smaller trailer manufactured by UltraLav instead of withdrawing its bid (R4, tab 84 at 2). The UltraLav trailer had a 20-foot box, four private restroom suites, each with a separate entrance on opposite sides of the trailer, and an ADA compliant restroom suite with a 60-inch turning radius (R4, tab 55a). Gilbert decided to provide this different product to the government even though it was aware of the RFQ's standard "Meet or Exceed" requirement that required it to provide the same product as bid (tr. 2/119).

8

On February 14, 2022, the government awarded Gilbert the contract for the Comforts of Home trailer (R4, tab 1). The contract included a specification similar to the one listed in the RFQ indicating the trailer should have one women's suite, one men's suite and one ADA unisex suite with a 66-inch turning circle (R4, tab 1 at 6). The specification also indicated each trailer should have a 140-gallon fresh-water tank and a 750-gallon waste tank (*id.*). Gilbert signed the contract with the government for the Comforts of Home trailer even though it intended to provide a different trailer than the one in its Unison bid (*see* R4, tab 35f).

On the same day the government awarded it the contract for the Comforts of Home trailer, Gilbert signed a bill of sale with Ready2Go to purchase the smaller UltraLav trailers (R4, tab 61). The UltraLav trailers differed significantly from the Comforts of Home trailers (*compare* R4, tab 53, *with* R4, tab 55a). Gilbert clearly intended to provide a product to the government materially different from the one in its bid.

Moreover, the government in contract block 29 indicated it was accepting the contractor's offer dated February 2, 2022, in response to the solicitation (R4, tab 1 at 1). Gilbert contends it did not make an offer on February 2, 2022 (app. br. at 4). Since the Unison bids closed on February 1, 2022, Gilbert concludes the government must have accepted Gilbert's later amended quote (*id.*). We disagree.

Mr. Gilbert admitted he had no conversations with SFC Zelbst prior to February 4, 2022 (tr. 2/123). As such, Gilbert made no offers to the government on February 2. Moreover, SFC Zelbst testified he used the February 2nd date in contract block 29 since that was the day after the Unison bids closed (tr. 1/40). After February 1, bidders could no longer alter their bids (tr. 2/76).

Furthermore, the UltraLav trailer described in Gilbert's February 4 email to SFC Zelbst had four private suites (R4, tab 55a). Gilbert subsequently incurred substantial extra expense in retrofitting the UltraLav trailer to provide semi-private suites with entrances on the same side (gov't br. at 38). Gilbert would not likely have incurred those additional costs if it thought the trailer the government had agreed to buy was the UltraLav trailer with private suites described in its February 4 email. We find the government's reference to Gilbert's February 2, 2022, offer in contract box 29 indicated the government accepted the offer Gilbert included in its Unison bid to provide the Comforts of Home trailer and not any subsequent modification to that bid.

Comment (c) to the RESTATEMENT (SECOND) OF CONTRACTS § 162 (2) states: "a misrepresentation is material if it would be likely to induce a reasonable person to manifest his assent" or "if the maker knows that for some special reason it is likely to

induce the particular recipient to manifest his assent."[3] *See Hollymatic*, 21-1 BCA ¶ 37,823 at 183,668. Gilbert is an experienced government contractor that had participated in numerous Unison contract awards prior to the one at issue in this appeal (*see* tr. 2/72-73). Gilbert likely knew the government would not award it the contract if it told them it intended to offer a trailer different from the one specified in the RFQ. Gilbert did not provide either a verbal or written notice to the government that it intended to withdraw its bid even though it discovered the Comforts of Home trailer was not available within the required delivery time (tr. 1/39).

In response to the contracting officer's question concerning whether their offered trailer contained paper towel dispensers and had a hydraulic lift system, Gilbert provided SFC Zelbst with the HH-412501-A trailer product description that included a box size of 20 feet by 6 feet (R4, tab 4 at 2). Gilbert contends this email notified the contracting officer of its intent to provide a product different from its bid, and the contracting officer's failure to respond to the email indicated his acceptance of the amended offer (app. br. at 5). The email, however, nowhere indicated this product description was for a trailer different from its bid.

Moreover, SFC Zelbst testified that he was looking for Gilbert's response concerning the paper towel dispensers and hydraulic lift and missed that the listed specifications differed from the RFQ requirements (tr. 1/50). Similarly, Gilbert did not sufficiently notify the contracting officer that it intended to change its bid when it provided SFC Zelbst with a screen shot of its SAM registration and the UltraLav manufacturer's trailer specifications (app. supp. R4, tab 4 at 2). SFC Zelbst testified that he does not believe he opened the email attachment for the specifications because he was interested in seeing only the SAM registration (tr. 1/58).

Even if SFC Zelbst had agreed to accept a different trailer, which we do not find, he would have had no authority to do so. A contracting officer cannot allow a contractor to substantially change the terms of its proposal after the time to submit proposals has closed. *See* FAR 15.208(b), SUBMISSION, MODIFICATION AND WITHDRAWAL OF PROPOSALS (DEC 1999) (proposal modifications received at the designated government office after the time specified in the receipt of proposals are "late" and cannot be considered unless a limited exception applies). We have previously held a specification deviation in a contractor's proposal affecting price, quality or quantity offered is a major deviation which cannot be waived. *Dongbuk R&U Eng'g Co.*, ASBCA No. 58300, 13-1 BCA ¶ 35,389 at 173,638. As we said in *Dongbuk*, relying on the Court of Claims explanation in *Prestex Inc. v. United States*, 320 F.2d 367, 371-72 (1963):

---

[3] A material misrepresentation does not require a finding of intent to mislead. We make no such finding in this case.

> [T]he Comptroller General repeatedly has held that a specification deviation in a contractor's proposal affecting price, quality or quantity offered is a major deviation which cannot be waived. 39 Comp. Gen. 570 (1960); 36 Comp. Gen. 251 (1956); 30 Comp. Gen. 179 (1950). The effect of statutes and regulations pertaining to the letting of public contracts is that the contract awarded must be the contract advertised and, if not, the government is not bound because its contracting agent cannot bind the government beyond his or her actual authority. The rejection of nonresponsive bids is necessary if the purposes of the competitive procurement are to be attained, that is, to give everyone an equal right to compete for Government business, to secure fair prices, and to prevent fraud.

*Dongbuk*, 13-1 BCA ¶ 35,389 at 173,638.

Here, the contracting officer should have rejected Gilbert's modified proposal as nonresponsive if he knew Gilbert no longer planned to offer a trailer that met the RFQ requirements. Such an action would be necessary to protect the integrity of the bidding process. Other bidders may have offered similar trailers at a lower price if they knew the government was willing to accept a different trailer from the one advertised. We find the contracting officer was unaware of Gilbert's intention to offer a different product prior to contract award, and even if he had known of that intention, he had no authority to waive the specifications after bid closure.

2. Gilbert's Bid Misrepresentation Induced the Government to Enter Into the Contract

The government clearly relied upon Gilbert's bid representation that it intended to provide the government with the Comforts of Home trailer. On February 9, 2022, the OMC office advised the contracting office that they were accepting Gilbert's bid because it provided the exact same trailer as another offeror but could be delivered sooner (R4, tab 58 at 1). The floor layout OMC included with its acceptance email to contracting was for the Comforts of Home trailer (R4, tab 58 at 13). If OMC, the requiring activity, knew Gilbert intended to provide a different trailer, it likely would have awarded the contract to a different vendor.

3. The Government was Justified in Relying on Gilbert's Misrepresentation

The government's reliance on Gilbert's bid representation was reasonable. Arguably, the government should have been put on notice that there could be an issue with the delivery date since no other bidder offered the Comforts of Home trailer within the required 60-day delivery schedule (tr. 1/83). The contracting officer, however,

11

apparently sent an email to Gilbert to confirm they could meet the 60-day delivery timeframe (R4, tab 54 at 1). Gilbert responded that they were "good to go" and that the vendor had "two trailers in stock and is estimating 8 weeks for the other two, so I am in deliberations with them now on how that could be expedited since you need these trailers within the 60 days" (R4, tab 4 at 1). Based upon this reassurance, we find it was reasonable for the government to rely upon Gilbert's bid.

We conclude Gilbert made a material misrepresentation in its bid and entered into the contract knowing it could not provide the requested product within the required time frame. The government relied upon the appellant's misrepresentation and awarded it the contract. The government is entitled to receive the product specified in the contract. *Jack Stone Co. v. United States*, 344 F.2d 370, 376 (Ct. Cl 1965); *Def. Sys. Co.*, ASBCA No. 50918, 00-2 BCA ¶ 30,991 at 152,973. We further conclude the government would likely have found Gilbert not to be technically acceptable and, consequently, not awarded it the contract had Gilbert not misrepresented its product to the government.

Accordingly, we conclude appellant's material representations in its bid resulted in this contract being *void ab initio*. This is a severe remedy, but it is premised upon the "potential for injury to the public interest by actions which compromise the integrity of the Federal contracting process." *Servicios y Obras Isetan S.L.*, 13-1 BCA ¶ 35,279 at 173,162 (citing *Miss. Valley*, 364 U.S. at 564-65).

## CONCLUSION

Since we find the contract is deemed *void ab initio*, we need not address appellant's other arguments. Since the contract has been determined to be *void ab initio*, there is no CDA contract in being, therefore, we are deprived of jurisdiction to consider appellant's appeal of the termination for cause. Consequently, appellant's appeal is denied.

Dated: June 22, 2023

ARTHUR M. TAYLOR
Administrative Judge
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 63508, Appeal of Gilbert Solutions, LLC, rendered in conformance with the Board's Charter.

Dated:  June 22, 2023

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals